In the matter of the application of JOHN V. L. PRUYN *vs.* ADAM VAN ALLEN, receiver of the Bank of Albany.

Where, after the making of an assessment against the stockholders of a bank, in pursuance of the act of April 5, 1849, to enforce the responsibility of stockholders &c. for the unsatisfied debts of the bank, there remains a sum in the hands of the receiver, the proceeds of certain assets of the bank, beyond what was anticipated or known at the time of the assessment, the same will not be ordered to be distributed among the stockholders, so long as there are creditors of the bank who are not yet fully paid, and such assets are necessary for that purpose.

It was not the intention of the act, or of the constitution, that stockholders should be reimbursed any portion of their contributions, until the debts of the corporation were extinguished; but on the contrary it was designed to make the stockholders liable to the creditors, to the full extent of their stock, until the debts are completely satisfied.

THE receiver, under the act of 1849, ch. 226, (*Sess. Laws, p.* 340,) and within the time (180 days, as enlarged by the judge,) named in section twelve, converted all the assets

which he could into money, by collection and by a sale of all such assets as the judge (to whom an application for leave to sell all the assets was made) authorized to be sold. The judge expressly refused authority to sell some of the assets, and some of that class have been collected before and some since the report, and assessment made by the receiver, and against the stockholders, as hereinafter stated, and the avails of such assets received since such report, and the remaining uncollected assets (amongst which are bonds and mortgages not yet due, and held as collateral to debts still unpaid) are now in the hands of the receiver, who desires to dispose of the money on hand and, when proper, of the unconverted assets. The receiver declared a dividend as required by section twelve, and in pursuance of sections fourteen and fifteen made his report of the unsatisfied debts &c., and a reference was ordered and the referee appointed, and the assessment was made against the stockholders, in pursuance of the statute, for the unsatisfied debts, about $325,000.

On the motion for confirmation of the assessment, application was made by Mr. Pruyn that the order should contain a direction that the assets then on hand should, when converted into cash, be distributed amongst the assessed stockholders, instead of being applied to pay the debts of the bank, which were then likely to, and do now ascertainedly, remain unsatisfied, by reason of the insolvency and pecuniary irresponsibility of some of the stockholders who were assessed. Such deficiency from insolvency &c. amounts, as estimated, to say $70,000, which will probably for the greater part never be collected. The assets still unsold, and the money received from assets (other than such assessments) since the assessment or report, and now on hand, are estimated to yield, if all collected, $40,000 or over.

The order for confirmation did not contain the provision asked for, but was made without prejudice to a renewal of the application for such a provision. That application is now made.

*J. V. L. Pruyn*, for the appellant.

*C. M. Jenkins*, for the receiver.

HOGEBOOM, J.   In this case the petitioner applies in behalf of himself and other stockholders of the Bank of Albany, for distribution among them of the proceeds of certain assets of the bank.   The receiver resists the application upon the ground that the creditors of the bank are not fully paid, and that these assets are necessary for such purpose. The fact being in accordance with the claim of the receiver it would seem but just, as well as lawful, that the creditors should be entitled to a preference.   Section two of article eight of the constitution declares that "dues from corporations shall be secured by such individual liability of the corporators and other means as may be prescribed by law." Section seven of article eight makes the stockholders, in every banking corporation and association doing business after the 1st of January, 1850, individually responsible to the amount of their stock, "for all its debts and liabilities of every kind" contracted after the last mentioned date. (1 *R. S. 5th ed.* 68, 69.)   It is not pretended that the stockholders as yet have been assessed to the amount of their stock.   These constitutional provisions manifest a decided intention to protect, at all events, the creditors of the bank, as against the bank, to the extent of its ability to pay, and as against the stockholders in addition to the extent of their stock.   And anterior to the act of 1849, creditors of the bank were allowed to sue stockholders individually, and collect of them so much of their debts as would not exceed the amount of stock held by the stockholders respectively thus sued.   But as it was perceived that this might lead to an unnecessary multiplication of suits, and to excessive and perhaps oppressive litigation, the matter was sought to be in some degree regulated and restrained by the act of 1849. (*Laws of* 1849, *ch.* 226, *p.* 340.   2 *R. S. 5th ed.* 581.)   It

is under the provisions and limitations of this act that the applicants suppose themselves entitled to the fund in question, and the claim is that the act contemplates the conversion of the available assets of the bank into money, within 90 or at most 180 days, and that after that period, (the deficiency of assets to pay the creditors being thus accurately ascertained,) the receiver must apply for and by the order of the court obtain permission to make the single and only assessment upon the stockholders on account of their stock which the law authorizes, to wit, an assessment of an amount which equally and ratably distributed among the stockholders, would exactly equal and satisfy the amount of unpaid debts, or so much of it as would not exceed the aggregate amount of the stock. This course pointed out by the statute has been pursued; but in the practical operation of it two results have followed: 1. By reason of the insolvency or other disability of some of the stockholders to pay, the full amount of the assessment has not by several thousand dollars been realized. 2. By reason of the assessment having been made before it was conclusively determined what was the full amount which could be realized from the assets of the bank, a fund of some $10,000 (less than the deficiency in the assessments) has been collected from the assets, beyond what was anticipated or known at the time of the assessment.

It is this fund which the appellants claim, they having, by the assessment, been made to pay, as they insist, their full *ratable* proportion of the unpaid indebtedness, and not being liable to make up the deficiency arising from the insolvency or inability to pay of their fellow corporators or associates. But I think they are not entitled to this fund. Assuming that under the act of 1849 but one assessment can be made, (which, if it be so, ought to be corrected by further legislation,) that assessment may, I think, legally, and should be sufficiently large to cover in its actual product the entire unpaid indebtedness of the bank. It is true the act

carefully provides for the payment over to the creditors, of the available assets of the bank, and for an apportionment of the unsatisfied debts and liabilities of the corporation among the stockholders, ratably in proportion to their stock, (§ 16, 2 *R. S. 5th ed.* 586, § 291;) but I do not perceive any restriction upon the power of the court to make the assessment sufficiently large, provided it be ratable, to cover in its anticipated pecuniary results, beyond all reasonable contingency, the entire deficit of indebtedness. This is in accordance with the spirit of the act and of the constitution, which obviously intend that the creditors shall be fully paid, so far as the assets of the corporation and an additional amount, equivalent to the nominal amount of the stock, will enable it to be done. And it was never designed that the stockkolders should be reimbursed any portion of their contributions to such a fund, until such debts were extinguished. The necessary expenses of the receiver, referee, clerks, and other incidental expenses attending the execution of their duties under the act, are declared expressly to be a charge upon the fund obtained by assessments, before dividends thereof shall be made, (§ 22;) and yet, although these would necessarily diminish the fund, it is not *expressly* declared that any allowance should be made for them in making the apportionment. But it is so obviously just, and within the intention of the legislature, that they should be, that I cannot doubt the power of the court to make the apportionment sufficiently large, (of course within the maximum limit of such apportionment,) to cover them. So the 21st section provides that the moneys collected by the apportionment shall be divided among the creditors. But who can doubt that if it should so happen that in the intervening time these debts were otherwise wholly or partially satisfied, or proved to be unfounded, the directions of the statute need not be literally obeyed, in such an unforeseen contingency, but that the stockholders would be entitled to such surplus. So, by section 23, neither the dividends nor the apportionment are

Pruyn *v.* Van Allen.

to be delayed by reason of a pending litigation or controversy, by or against the corporation or association, but a sufficient sum may be retained in the hands of the receiver to protect him against any unfavorable result, and when the litigation or controversy shall have been closed, and the sum realized or lost by the event of the litigation, it is to be applied accordingly, or distributed among the creditors or stockholders, as the event may require. And the 24th section provides that after a certain event if any assets or effects remain in or come into the hands of the receiver, they shall, after being converted into cash, be distributed among the stockholders, in proportion to the sums paid by them. That event is *the payment and discharge of the debts and liabilities of the corporation or association.* And I think it is *only* after such an event that the stockholders can or ought to be entitled to any portion of the moneys coming into the hands of the receiver. The fund now in question was a part of the assets of the bank. The bank was unable to pay all its debts, and these assets, upon every principle of law and equity, should be devoted to that purpose. These assets are not the product of the assessment upon the stockholders, but were the property of the corporation itself. To deprive the creditors of the corporation of this fund, by an over nice criticism and merely literal construction of the terms of the act, would be doing violence, I think, both to the spirit of the law and of the constitution.

It is said that such a construction will make the stockholders sureties for each other; that is, the responsible stockholders sureties for the irresponsible ones. This is not so, but it makes, as I think the law and the constitution intended, the stockholders liable to the creditors to the full extent of their stock until the debts are completely satisfied. The doctrine of suretiship is not applicable; but if it be claimed that such is the practical effect of the construction adopted, then I regard it as far more just, as well as legal, that the co-corporator or associate should be the surety for the delin-

quent stockholder, than that the creditors should.   The stockholder is supposed to be more familiar with the operations of the bank, and with the credit and standing of his fellow stockholders ; and if he is dissatisfied therewith he can ' sell his stock.   He is a member of the corporation, enjoys its benefits, is entitled to its privileges, receives its dividends, controls its direction, and, to a certain extent, guaranties its solvency.   The creditor deals with the corporation as with an independent and, to a certain extent, antagonistic contracting party ; pays for the benefits he receives and the privileges he enjoys ; trusts, with reason, to the ability of his debtor to pay, and confides in the provisions of the constitution and or the law intended for his protection and indemnity.

The application must be denied, and the receiver be directed to distribute the fund among the creditors of the bank.

[ALBANY SPECIAL TERM, January 27, 1863.   *Hogeboom,* Justice.]